## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT GREENEVILLE

| | | |
|---|---|---|
| DANIELLE RYANS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| METROPOLITAN LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

**COMES NOW** the Plaintiff and makes the following representations to the Court for the purpose of obtaining relief from Defendant's refusal to pay long-term disability benefits due under an employee benefits plan under ERISA, and for Defendant's other violations of the Employee Retirement Income Security Act of 1974 ("ERISA").

## JURISDICTION AND VENUE

1. This Court's jurisdiction over the Plaintiff's claims for long term disability benefits is invoked under federal question jurisdiction pursuant to 28 U.S.C. § 1331 and under the express jurisdiction found in the ERISA statute under 29 U.S.C. § 1132(e) (ERISA § 5-2(e)).

1

2. Plaintiff's claims "relate to" an "employee welfare benefits plan" or "plans" as defined by ERISA, 29 U.S.C. § 1001 *et seq.*, and the subject disability benefit plans constitutes a "plan under ERISA."

3. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2569.503-1 provide a mechanism for administrative or internal appeal of benefits denials.

4. In this case, the avenues of appeal have been exhausted, and this matter is now properly before this court for judicial review.

5. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

## PARTIES

6. Plaintiff was at all relevant times, a resident of the City of Church Hill, County of Hawkins, State of Tennessee.

7. The Plaintiff was employed by Amedisys, Inc, at its location at 2025 Meadowview Parkway, Suite 101, City of Kingsport, County of Hawkins, State of Tennessee.

8. Plaintiff alleges upon information and belief that the Amedisys Employees Welfare Benefit Plan (hereinafter "Plan") is, and at all relevant times was, an "employee welfare benefit plan" as defined by ERISA.

2

9. The Plan provides eligible employees with disability income protection as defined by the Plan.

10. Plaintiff alleges upon information and belief that Amedisys, Inc, is the Plan Sponsor and Plan Administrator of the long-term disability Plan.

11. The Plan Sponsor and/or Plan Administrator and/or the Plan additionally maintained or contained other benefits, insurance policies, and/or component plans under which Plaintiff may be entitled to benefits if found disabled under the long-term disability Plan.

12. Defendant Metropolitan Life Insurance Company is the underwriter for a Group Policy identified in the claim file as having the ID Number 10093771 and Claim Number 712103020052 (hereinafter "Policy").

13. Defendant is the party obligated to pay benefits and to determine eligibility for benefits under the Policy and the Plan.

14. Defendant is an insurance company authorized to transact the business of insurance in this State and may be served with process by and through its registered agent, CT Corporation System, 300 Montvue Road, Knoxville, Tennessee 37919-5546, or at its principal place of business, 200 Park Avenue, New York, New York 10166-0005.

## FACTS

15. Defendant was the entity responsible for processing claims and adjudicating appeals regarding long-term disability benefits under the Plan.

16. The long-term disability Plan is fully insured by Defendant under the Policy.

17. The Policy was issued and delivered in Hawkins County, Tennessee.

18. The Plaintiff was employed as a clinical case manager-RN for Amedisys, Inc, since February 2020, and as such, Plaintiff was thereby a participant or beneficiary of the Plan and is covered by the Policy that provides benefits under the Plan.

19. The Plaintiff ceased work on or about March 5, 2021, due to a disability while covered under the Plan.

20. The Plaintiff has been and continues to be disabled as defined by the provisions of the Plan.

21. In accordance with the review procedures set forth in the Plan, 29 U.S.C. § 1133, and 29 C.F.R. § 2560.503-1, Plaintiff appealed the claim until exhausting the required Plan appeals.

22. Having submitted the appeal, and as Defendant has confirmed, Plaintiff exhausted the required administrative remedies.

23. Based on the terms of the Policy, Plaintiff's complaint is timely and is not otherwise time barred.

4

24. The Policy in this matter initially defines total disability as receiving appropriate care and treatment and complying with the requirements of such treatment, and during the elimination period and the next 24 months of sickness or accidental injury: unable to earn more than 80% of your predisability earnings at your own occupation for any employer in the national economy; and unable to perform each of the material duties of your own occupation for any employer in the national economy; and you are after such period: unable to earn more than 60% of your predisability earnings at any gainful occupation for any employer in the national economy; and unable to perform the duties of any gainful occupation for any employer in the national economy for which you are reasonably qualified taking into account your training, education, and experience.

25. The Plaintiff's own occupation as a clinical case manager-RN includes duties such as responsible for monitoring patient's clinical course, communicating with care team, and collaboratively achieving patient outcomes. They provide care plans to meet patient's needs and offer alternative treatment options for cost effective care. TN Case Managers focus on managing the health conditions of patients with long term or complex medical needs. They coordinate with various healthcare professionals and the patient's family to ensure the best possible care.

5

26. Plaintiff is entitled to long term disability benefits as Plaintiff has met the long-term disability Plan's and the Policy's requirements, and Plaintiff's disability continues to preclude work in a full-time job in any competitive employment.

## Net Present Value of The Contractual Benefits

27. If disabled pursuant to the terms of the policy, Plaintiff, who was paid long-term disability benefits from March 5, 2021, to March 5, 2023, is entitled to a monthly gross long-term disability benefit of $2,250.00 offset by a monthly Social Security disability benefit of $1,420.00 (there are no auxiliary beneficiaries), for a net monthly long-term disability benefit of $830.00 from March 6, 2023, to June 18, 2054, such that Plaintiff is owed $25,154.73 in back benefits, $152,091.66 in future benefits (using 5.0% to discount to net present value), with no overpayment owed, for a total long-term disability benefit of $177,246.40.

28. The Defendant's policy contained an "offset" provision that required Plaintiff to apply to the Social Security Administration for benefits (as the offset applies to benefits Plaintiff received or is eligible to receive). If Plaintiff won the Social Security case, then not only are future benefits from Defendant reduced by the amount of the monthly check from Social Security, but to the extent that any back benefits from Social Security overlap with benefits the

6

Defendant has already paid, the Defendant gets to recoup these benefits from the Plaintiff. Plaintiff applied for Social Security disability benefits and was granted disability benefits by the Social Security Administration.

### Evidence of Disability

29. Plaintiff's disability includes the following impairments: autonomic dysfunction, orthostatic hypotension, palpitations, COVID-19, Factor V Leiden mutation, tachycardia, HTN, IBS-C, insomnia, and tendonitis.

30. Evidence submitted by Plaintiff to Defendant supporting disability includes, *inter alia*, the following: An April 2, 2024, medical source statement from James Schrenker, M.D., Board Certified Family Physician, and Rebecca Flora-Waterman, FNP-C. Dr. Schrenker opined Ms. Ryans would be able to sit for 2-3 hour out of an 8 hour workday for 1-2 hour at one time, stand or walk 1-2 hours out of an 8 hour workday for 15-60 minutes at one time, infrequently be able to lift and carry 1-10 lbs., infrequently be able to bend at waist, reach above shoulders, stand on a hard surface, and use hands for fine manipulation, require elevation of one or both lower extremities for at least 1 hour of time during a normal workday, require at least 30 minutes of best rest during a normal workday, have problems with stamina and/or endurance, require at least 3 days a week, to take an extra unscheduled rest break of at least 10 minutes or more in addition to the one 30 minute break

and two 15 minute breaks normally allowed, would not be reliable and dependable in regularly attending an 8-hour a day, 40 hour work week, medications would cause lapses in concentration or focus, be off task at least more than 10% of any given workday, have environmental restrictions, and be absent at least 2 days during any given month. Dr. Schrenker specifically stated that Plaintiff was "incapable of working in any capacity."

31. On January 13, 2025, Rebecca Williams, a vocational expert, opined there would not be any jobs in the national economy that Ms. Ryans would be able to perform based on the opinions of the treating physicians.

32. Despite overwhelming evidence to the contrary, Defendant's medical consultant, Dr. Pietruszka, said Ms. Ryans would be able to sit constantly up to 6 hours per day, stand frequently for up to 4 hours per day, walking, lifting carrying, pushing, pulling, climbing stairs, stooping, kneeling, crouching, reaching would be restricted to occasionally, never balance or crawl. The consultant also opined she would not be able to climb ladders, work at unprotected heights, operate motor vehicles and no heavy machinery. However, Dr. Pietruszka ignored the treating physician's opinions, the Plaintiff's subjective complaints, and selectively referenced the extensive medical record. The consultant's opinion bears no resemblance to Ms. Ryans' medical reality.

33. Additionally, none of Plaintiff's reported activities, or activities attributed to the Plaintiff, were inconsistent with disability. In any event, consideration must be given regarding the modifications and help a plaintiff requires for activities. *Hoover v. Berryhill*, 2017 WL 5494565, at \*4 (N.D. Ind. Nov. 16, 2017); *Diedrich v. Berryhill*, 874 F.3d 634, 642-643 (9th Cir. 2017 (court improperly took note of certain daily activities that plaintiff could perform, such as bathing, cooking, taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook, but ignored other evidence showing the difficulties plaintiff faced in everyday life); *Brown v. Commissioner Social Security Administration*, 873 F.3d 251, 269-270 (4th Cir. 2017) (court noted various of plaintiff's activities such as cooking, driving, doing laundry, collecting coins, attending church and shopping, but failed to acknowledge the limited extent of those activities as described by the plaintiff or explain how those activities showed that he could sustain a full-time job); *Herrold v. Colvin*, 2015 WL 1243293, at \*6 (N.D. Ind. Mar. 17, 2015) (7th Circuit repeatedly criticizes credibility determinations based on a plaintiff's ability to take care of her personal hygiene, children, or household chores) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009); and *Blow v. Astrue*, 2012 WL 3233621, at \*9 (N.D. Ind. Aug. 6, 2012) (finding improper reliance on daily activities when others performed almost all of the household chores

9

and any activities the plaintiff could perform were at a slower pace with frequent breaks).

**<u>Policy Provisions</u>**

34. There is no requirement that the insured provide *only* objective medical evidence or other objective indica of disability. Since the policy does not say it, Defendant does not have the authority to require it. *See*, *e.g.*, 29 U.S.C. § 1104(a)(1)(d); *Fifth Third Bancorp. v. Dudenhoeffer*, 134 S.Ct. 2459, 2468 (2014), *Salomaa v. Honda*, 642 F.3d 666, 678 (9th Cir. 2011); *Carradine v. Barnhart,* 360 F.3d 751,755 (7th Cir. 2004); *Abdullah v. Accentcare Long Term Disability Plan*, 2012 WL 4112291 *11 (N.D. Cal); *Krupp v. Liberty Life Assurance Company of Boston*, 936 F.Supp.2d 908, 917 (N.D. Ill. 2013). Defendant's medical consultants dismissed Plaintiff's subjective complaints out of hand without meaningful analysis. This was unreasonable.

35. The relevant policy allows for independent medical examinations (hereinafter "IME") and functional capacity examinations. All of Defendant's other medical opinions come from file reviews. Non-examining evidence has little value in evaluating pain, fatigue or impaired focus, concentration, or cognition. *See*, *e.g.*, *Kalish v. Liberty Mutual*, 419 F. 3d 501, 508 (6th Cir. 2005); *Calvert v. Firstar Finance, Inc.*, 409 F. 3d 286, 295 (6th Cir. 2005); *Smith v. Aetna*, 312 F. Supp. 2d 942, 954 (S.D. Ohio 2004);

10

*Meyer v. MetLife*, 341 F. Supp. 2d 865 (S.D. Ohio 2004); *Black v. Unum Life Insurance Company of America*, 324 F. Supp. 2d 206, 215 fn.8 (D. Me. 2004).

### Defendant's Medical Consultants and/or Third-Party Vendors

36. Defendant relied on medical consultants, including through third party vendors, for examinations and file reviews during the administrative appeal of Plaintiff's disability claim and said consultants opined, *inter alia*, that Plaintiff had minor impairments which had no meaningful impact on functionality without addressing work reliability, consistency, substantial capacity, and steady attendance and dismissed the subjective complaints.

37. In the instant matter, Defendant relied, *inter alia*, on third party vendors, including Genex, to conduct medical examinations and/or medical file reviews during the administrative appeal of Plaintiff's disability claim. Genex works for disability insurance companies like Defendant. In 2010, Genex bought the Life Insurance of North America's disability case management business. At one time Genex's website provided context for its "cost cutting" mission and the fact that it only serves the insurance industry: "For over 30 years, Genex has been the recognized industry leader for managing disabilities" and "Genex's Disability...Absence Management Services provide high-quality, customizable services driven by specialized

11

disability management expertise to help payers reduce claims costs…" and "Specialized, customizable services delivered by in-house disability experts help you reduce claims costs…" See, *e.g.*, *Jones v. Life Insurance Company of North America*, Case No. 2:19-cv-04669-DLR (D. Ariz.). The conflict of interest is obvious.

38. Ignoring evidence of pain, fatigue, or other disabling conditions because they are subjective is arbitrary and capricious. *Miles v. Prudential Life Insurance Co.*, 720 F.3d 472, 486 (2d Cir. 2013). This is precisely what the Defendant and/or its medical consultants did.

39. An ability to perform the duties of any full-time occupation requires reliability, consistency, substantial capacity, psychological stability, and steady attendance. *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir. 1980); *Tippitt v. Reliance Std. Life Ins. Co.*, 457 F.3d 1227, 1236 (11th Cir. 2006); *McIntyre-Handy v. APAC Customer Services, Inc*., 2005 WL 5369158, *6 (E.D. Va. 2005); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994). Indeed, job preclusive vocational limitations include, *inter alia*, needing additional, unscheduled work breaks, chronic absenteeism, and being off task more than 10% of the work period. *Johnson v. Saul*, 2019 WL 6876012, at *3 (E.D. Mo., 2019); *Ricardo C. v. Saul*, 2019 WL 4034484, at *2 (N.D. Ill., 2019); *Hicks v. Commissioner of Social*

*Security*, 2016 WL 2605234, at *4 (E.D. Mich., 2016); *Mershad v. Commissioner of Social Security*, 2016 WL 659307, at *12 (S.D. Ohio, 2016); *Coffman v. Commissioner of Social Security*, 2015 WL 9311522, at *3 (E.D. Mich., 2015); *Williams v. Commissioner of Social Sec.*, 2013 WL 3771381, at *6 (E.D. Mich., 2013). Defendant and/or its medical consultants provided no meaningful analysis on any of these issues.

40. There are no challenges to Plaintiff's credibility. In other words, Plaintiff's treating physicians have directly addressed Plaintiff's reliability, consistency, substantial capacity, psychological stability, and steady attendance. The Defendant's medical consultants have failed to substantively account for, much less address, any of these issues.

## ERISA Administrative Issues

41. The Plaintiff has now exhausted the required administrative remedies for the claim for long-term disability benefits under the Plan and/or Policy pursuant to ERISA, or such administrative remedies are deemed exhausted and/or the long-term disability benefits are deemed denied.

42. The Court's standard of review for the ERISA claims is *de novo* under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

43. The entity that chose to deny long term disability benefits would pay any such benefits due out of its own funds.

13

44. Defendant was a claims decision-maker under a perpetual conflict of interest because the long-term disability benefits would have been paid out of its own funds.

45. Defendant allowed its concern over its own funds to influence its decision-making.

46. Defendant has acted under a policy to take advantage of the potential applicability of ERISA to claims.

47. Defendant's administrative process did not provide Plaintiff with a full and fair review; by way of example, its denial letters did not contain the specific reasons for the denial and did not advise Plaintiff of the information Defendant required to approve continuing benefits.

48. The disability insurance policy does *not* provide Defendant with discretionary authority.

49. In the alternative, relevant state law bans any such clause purporting to confer the Defendant with discretionary authority.

50. At all times relative hereto, the Defendant has been operating under an inherent and structural conflict of interest because any monthly benefits paid to Plaintiff are paid from Defendant's own assets with each payment depleting those same assets.

## **Defendant's Obligations and Responsibilities under ERISA**

14

51. As the party obligated to pay benefits and the administrator given discretion in construing and applying the provisions of the disability plan and assessing Plaintiff's entitlement to benefits, the Defendant is an ERISA fiduciary.

52. The Defendant, as an ERISA fiduciary, will have to show it exercised care, skill, prudence, diligence, and loyalty solely for the benefit of Plaintiff like that borne by a trustee under common law. *See* § 1002(21)(A)(i) and (iii); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 220, 124 S. Ct. 2488, 2502 (2004); *Mondry v. Am. Fam. Mut. Ins. Co.*, 557 F.3d 781, 803 (7th Cir.), *cert. denied*, 130 S. Ct. 200 (2009).

53. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

54. Under ERISA, a fiduciary should fully investigate the relevant and applicable facts of any claim.

55. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

56. Under ERISA, a fiduciary should fairly consider all information obtained regarding a claim, including that which tends to favor claim payment or continuation as well as that which tends to favor claim declination or termination.

15

57. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

58. Under ERISA, a fiduciary should consider the interests of its insured at least equal to its own and resolve undeterminable issues in its insured's favor.

59. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

60. Under ERISA, a fiduciary has the obligation to read, interpret and understand all the pertinent medical information with sufficient clarity so as to be able to make a fair, objective, and thorough evaluation of its insured's claims for disability benefits.

61. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

62. Under ERISA, a fiduciary's denial of a claim should not be based on speculation.

63. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

64. Under ERISA, a fiduciary should be objective in its assessment of facts and not attempt to bias the claims investigation process in any manner.

65. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

16

66. Under ERISA, a fiduciary should not take into consideration the amount of money it would save if a particular claim or set of claims is denied, terminated, or otherwise not paid.

67. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

68. Under ERISA, a fiduciary should refrain from excessive reliance on in-house medical staff to support the denial, termination, or reduction of benefits.

69. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

70. Under ERISA, a fiduciary should not conduct unfair evaluation and interpretation of attending physicians' or independent medical examiners' reports.

71. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

72. Under ERISA, a fiduciary should evaluate the totality of its insured's medical conditions.

73. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

74. Under ERISA, a fiduciary has an obligation to conduct a fair, thorough, and objective review.

75. The Defendant failed to satisfy its duties under ERISA as specified in the immediately aforementioned paragraph of this Complaint.

**Defendant's History of Biased Claims Administration**

76. Defendant Metropolitan Life Insurance Company ("MetLife") has publicly stated it places company profit above loyalty to its insureds. An example - in 2014, the Arizona Department of Administration ("ADOA") solicited proposals from contractors to service and insure the state's life, AD&D, and disability programs for the 2015 plan year. MetLife's bid submission to the ADOA included a Return on Investment Measures and Results. MetLife's savings are measured by 1) approval/denial rates; 2) RTW successes; 3) LTD claim termination rates; 4) appeal decisions upheld; 5) overpayment recovery; and 6) special investigation unit successes. MetLife claims the following results: 1) 5- 25% reduction in STD duration; 2) 2-15% reduction of LTD incidence; and 3) increased Social Security approval rates of 1-5%. This information is public material and can be accessed directly at https://procure.az.gov/bso/external/bid/tabulation/quotes.sdo?docId=ADS PO14-00004086&fromQuote=true. *See* page 17 of 51790-30869-responseform3-capacityofofferor.docx.

**CAUSE OF ACTION**
**FOR PLAN BENEFITS AGAINST ALL DEFENDANTS**
**PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)**

18

**PLAINTIFF** incorporates all the allegations contained in the all the aforementioned paragraphs of this Complaint as if fully stated herein and states further that:

77. Under the terms of the Plan, Defendant agreed to provide Plaintiff with long term disability benefits if Plaintiff became disabled as defined in the Plan.

78. Plaintiff is disabled under the terms of the Plan.

79. Defendant failed to provide benefits due under the Plan, and this denial of benefits to Plaintiff constitutes a breach of the Plan.

80. The decision to deny benefits was wrong under the terms of the Plan.

81. The decision to deny benefits and decision-making process were arbitrary and capricious.

82. The decision to deny benefits was not supported by substantial evidence in the record.

83. The decision-making process did not provide a reasonable opportunity to the Plaintiff for a full and fair review of the decision denying the claims, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

84. The appellate procedures did not provide the Plaintiff a full and fair review.

85. As an ERISA fiduciary, the Defendant owed the Plaintiff fiduciary duties, such as an obligation of good faith and fair dealing, full and complete information, and a decision-making process free of influence by self-interest.

86. The Defendant violated the fiduciary duties owed to the Plaintiff.

87. As a direct and proximate result of the aforementioned conduct of the Defendant in failing to provide benefits for Plaintiff's disability and in failing to provide a full and fair review of the decision to deny benefits, Plaintiff has been damaged in the amount equal to the amount of benefits to which Plaintiff would have been entitled to under the Plan, and continued benefits payable while the Plaintiff remains disabled under the terms of the Plan.

88. As a direct and proximate result of the conduct of the Defendant in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff requests that this Court grant the following relief in this case:

1. A finding in favor of Plaintiff against Defendant;

2. Damages in the amount equal to the disability income benefits to which Plaintiff was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and post judgment interest;

4. An Order requiring Defendant to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan;

5. An Order requiring the Defendants and/or the Plan to provide Plaintiff with any other benefits to which Plaintiff would be entitled pursuant to a finding that Plaintiff is disabled under the Plan;

6. Plaintiff's reasonable attorney fees and costs; and,

7. Such other relief as this Court deems just and proper.

BY: */s/ D. Seth Holliday*
D. SETH HOLLIDAY, ESQ.
TN Bar No. 023136
GA Bar No. 426951
MD Fed. Bar No. 30262
IL Bar No. 6237320
**MCMAHAN LAW FIRM, LLC**
700 S. Thornton Avenue
P.O. Box 1607
Dalton, Georgia 30722
(706) 217-6118 (phone)
(706) 217-6880 (fax)
sholliday@mcmahanfirm.com
*Attorneys for Plaintiff*